**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC., | |
|     Plaintiff, | |
|     v. | Civil Action No. 2:07-CV-497 (TJW) (CE) |
| ARTESYN TECHNOLOGIES, INC. *et al.*, | **JURY** |
|     Defendants. | |

**DEFENDANTS DELTA ELECTRONICS, INC., DELTA PRODUCTS CORP.,
MURATA ELECTRONICS NORTH AMERICA, INC., MURATA MANUFACTURING
CO., LTD., MURATA POWER SOLUTIONS, INC., POWER-ONE, INC., AND BEL
FUSE INC.'S OPPOSITION TO PLAINTIFF SYNQOR'S MOTION FOR LEAVE TO
<u>AMEND ITS FIRST AMENDED COMPLAINT</u>**

## I.  INTRODUCTION AND RELEVANT FACTS

SynQor's motion for leave to add U.S. Patent No. 7,558,083 ("the '083 patent") to this case should be denied.

This is already a three-patent case against eleven defendants that has been pending for over one and a half years (the case was filed in November 2007).  More than fifteen months ago, SynQor opposed another defendant's motion to add patents to this already-complex case, stating that "[t]he jury who will hear this case will have enough to tackle with the complexity of the subject matter of the SynQor Patents, the numerous infringing devices of the eleven different infringers and the corresponding damages."  (D/E 111, SynQor's Response in Opposition to Lineage's Motion to Amend).  Although the issues here are different, the result should be the same—SynQor can and should initiate a new lawsuit to address these new and late claims.

There is no reason to shoehorn this new patent into the current schedule when SynQor can assert the '083 patent in a parallel litigation that would be both efficient and relatively economical.  The new parallel litigation could reuse all the discovery in this litigation, while at the same time address the unique aspects of the '083 patent in a separate proceeding that will not impact the current litigation.

More importantly, SynQor's new '083 patent should not be permitted in this case because its inclusion will cause substantial juror confusion that will impose undue prejudice on the defendants.  In addition, the new '083 patent raises new infringement theories that are different from those at issue in this case.  The new '083 patent also raises unique invalidity issues, requiring a new invalidity search.

Beyond question the dominant reason for putting the new '083 patent on a separate parallel track is the avoidance of inevitable juror confusion.  The risk of juror confusion is not speculative, but definite.  The harm would not be peripheral and minor, but central and severe.

No jury, even with the best intentions and dedication, can be expected to unravel the different (and seemingly contradictory) issues and standards to be applied to the patents in this lawsuit, on the one hand, and the new '083 patent, on the other.  The substantial juror confusion goes to the heart of the two central issues in this case:  patent infringement and patent invalidity.  We will address invalidity first.

When SynQor filed this case a year and a half ago, SynQor asserted three different patents relating to power supply systems (the three "patents-in-suit").  The defendants spent eight months searching for prior art and preparing extensive invalidity contentions for each of the three patents-in-suit, and served these invalidity contentions over a year ago on July 15, 2008.  These invalidity contentions compared the myriad claims asserted by SynQor to prior art that filled 17 banker boxes.  SynQor then forwarded the defendants' contentions, along with the 17 boxes of prior art references, to the Patent Examiner during prosecution of the '083 patent application (the "'083 Examiner").

After what appears to be a cursory review of the 17 boxes of prior art (if any review was actually undertaken at all), the Patent Office issued a notice of allowance for the '083 patent.   If the '083 patent is allowed into this case, the jury will hear how the Patent Office granted the '083 patent over all the prior art located by the Defendants in the current action.  The jury will see the defendants' invalidity contentions listed on the face of the '083 patent.  ('083 patent, pg. 7-8).  The jury will hear SynQor argue that the Patent Office found SynQor's invention patentable over all of the defendants' art.  Such an argument would unfairly taint the Defendants' invalidity defense for the three patents currently in this case.

Even though legally irrelevant, a lay person cannot help but feel that the prosecution of the '083 patent and the Patent Office's issuance of the '083 patent over all of the defendants' prior art must have some impact on the defendants' invalidity case.  The reasons why the '083

patent prosecution has no bearing on the earlier patents turn on subtleties of patent law—and no jury, which lacks legal training and experience in patent law, can be expected to master and dispassionately apply the proper legal rules, which appear at first blush to run against common sense. Thus, the jury would not realize (or believe) that the Patent Office's actions concerning the new '083 patent are 100% irrelevant to the strength of the art as applied to the current patents-in-suit. Not even a direct jury instruction on this point can undue the inevitable taint of the prosecution of the new '083 patent.

Of course, the reason that the '083 patent prosecution is irrelevant is that the '083 patent has different claims than those found in the patents-in-suit. The question of whether the prior art discloses every element of the asserted claims of the patents-in-suit is not answered by looking at what the '083 Examiner did when allegedly comparing the art to SynQor's new '083 patent claims.

Juror confusion will be further compounded by the significant "side story" that will be central to the '083 patent case. In the trial for the '083 patent, the jury will hear that the Examiner did not, in fact, study all the prior art found by the defendants or compare each page of the prior art to each claim of the '083 patent. On the contrary, given the realities of the Patent Office and the amount of time available for each examination, it is likely that at most a cursory review was given to some portion of the submitted art. A thorough review would have taken weeks—a luxury that patent examiners do not have. Notably, the Patent Examiner did not issue a single rejection based on the seventeen boxes of prior art. Thus, there is no evidence of record that the Examiner studied any of the references.

This side story—concerning what level of review was given to the 17 boxes of prior art during the prosecution of the '083 patent—will be central to the trial on the '083 patent. However, this side story is 100% irrelevant to the question of the validity of the patents currently

in suit.  As a matter of law, the level of review given to the prior art for the purposes of

examining the patentability of the '083 patent has zero bearing on the strength of that art as

compared to the patents-in-suit.  However, the jury will likely not see it that way, and would

inevitably be unfairly biased to believe that the Examiner's actions on the '083 patent does

support the validity of the patents in suit.

Second, there will be significant juror confusion on the question of infringement.  The

current patents in suit are all "system" patents.  The defendants do not sell systems.  They all

supply "components" to customers.  SynQor's position in this case is that the customers are the

direct infringers and that the defendants are somehow "inducing" the customers' infringement.

A central issue in this case is whether SynQor can really prove inducement, regardless of

whether the jury believes the customers are or are not directly infringing.  Thus, the defendants

have a two-prong defense to infringement:  First, the customers are not directly infringing, and

second, regardless of what the customers are doing, their actions are not being "induced" by the

defendants.

By contrast, the '083 patent is a "component" patent, and SynQor will be contending that

the defendants are directly infringing that patent.  The defendants' customers' specific uses are

not relevant to the question of the defendants' direct infringement of a component.  The

defendants' "no inducement" defense for the patents in suit is likewise not relevant to the '083

patent.

If the '083 patent is combined with the current patents, the jury will be thoroughly

confused.  The jury will have difficulty keeping straight which arguments apply to which patents,

and whether SynQor is arguing for direct infringement of all patents, or only some of the patents,

or who SynQor is alleging is the direct infringer in each instance.  The jury will wonder what

relevance the customers' action have on the '083 patent and why the defendant-customer

interactions matter.  If the jury decides that any defendant is directly infringing the '083 patent, the jury will likely have difficulty firmly separating that finding from the question of induced infringement for the three patents-in-suit, even though as a matter of law there are significant differences in the required proofs.  Some potential questions the jury might ask itself are: "if a defendant is infringing the '083 patent and the customers are infringing the current patents, then isn't our job done?" "Why must we look at the inducement question when we have already found direct infringement by the defendants?" "If the defendants are infringing the component patent, don't they necessarily infringe the 'system' patents?" "If we find any defendant using SynQor's 'invention,' wouldn't both system and component patents be infringed?"  There are many more confusing issues and possible questions of this nature—all which are natural questions stemming from a jury who has not studied patent law and has only spent two or three weeks listening to the arguments and evidence in this case.

There is a simple solution to this very real juror confusion problem on the issues of invalidity and infringement—keep the '083 patent out of this case, which has been pending for one and a half years already.  SynQor should file a separate lawsuit for the '083 patent with its own timetable and its own trial.

The Court should therefore deny SynQor's motion to amend its Complaint to add the '083 patent.

## II.    APPLICABLE LAW

SynQor's motion for leave to add the '083 patent to this case is properly made under Rule 15(d), not under Rule 15(a) as SynQor mistakenly attests.  Unlike Rule 15(a), which provides for amended pleadings, Rule 15(d) governs supplemental pleadings for causes of action arising from a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d); s*ee also Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th

Cir. 1998); *Quantum Hyperbaric Processing Servs. v. Divers Alert Network Am.*, Civil Action No. 3:05-cv-01100-G, D/E 72, pg. 5 (N.D. Tex. Feb. 1, 2006) ("Amended pleadings relate to matters that occurred prior to filing of the original pleading … supplemental pleadings deal with events subsequent to the pleading … .").

SynQor's new infringement allegations were not ripe at the time it filed its original complaint—the '083 patent had not yet issued, and thus the defendants could not have been accused of infringing it.  Therefore, SynQor cannot "amend" its original complaint to add the '083 patent.  Instead, SynQor's motion should be governed by the standard set forth in Rule 15(d) for supplemental pleadings.  *See Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, 2007 WL 127997, *3 (N.D. Cal. Jan. 12, 2007) (applying Rule 15(d) where a party sought to amend its counterclaims to add a patent that it acquired after the date of its original pleading); *Corporate Commc'ns Consultants v. Dubner Computer Sys.*, 1982 WL 1879, *2-3 (D.N.J. 1982) (treating a motion to amend as a motion to supplement under Rule 15(d)  because "it alleges matters occurring about a year after the complaint was filed," and noting that the test for 15(d) is different from 15(a)).

SynQor faces a higher burden under Rule 15(d) because "[w]hile the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide." *Burns*, 158 F.3d at 343; *see also Hyde v. Hoffman-La Roche Inc.*, 2008 WL 2923818, at *1 (N.D. Tex. July 30, 2008) (noting that "[o]f course, there is a fundamental difference between Rule 15(a), which instructs courts to [] freely give leave when justice so requires, and Rule 15(d) which has no such liberal policy." (*citing Burns*, 158 F.3d at 343)).  Supplementation under Rule 15(d) may only be done "on just terms."  Fed. R. Civ. P. 15(d).  Further, SynQor cannot supplement its pleadings under Rule 15(d) unless the supplementation "will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the

action." *See Quantum Hyperbaric*, Civil Action No. 3:05-cv-01100-G, D/E 72 at 5 (*quoting* 6A

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (3d. ed. 2004));

*see also Micron Technology, Inc. v. Rambus Inc.*, 409 F.Supp.2d 552, 558 (D. Del. 2006)(noting

that a motion under Rule 15(d) should be denied if "it causes undue delay or undue prejudice").

 SynQor's motion to amend its complaint is also of necessity a motion to amend SynQor's

infringement contentions. It must therefore also be analyzed pursuant to the standard set forth in

P.R. 3-6, which requires a showing of "good cause." *See Samsung Electronics Co., Ltd. v.

Matsushita Electric Industrial Co., Ltd.*, Civil Action No. 6:06-cv-00154-LED, D/E 93, pg. 1

(E.D. Texas, May 4, 2007) (finding that the plaintiff's motion to amend its complaint to add two

new patents "is by necessity also a motion to amend its PICs"). A motion to amend infringement

contentions is also a motion to modify the court's scheduling order under Fed. R. Civ. P. 16(b),

which likewise requires a showing of "good cause." *Id.* (*citing* Fed. R. Civ. P. 16(b); *S&W

Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003); *and* P.R. 3-6).

Trial courts should consider four elements when determining whether to allow such a

modification: (1) the explanation for the failure to meet the deadline; (2) the importance of the

thing that would be excluded; (3) potential prejudice in allowing the thing that would be

excluded; and (4) the availability of a continuance to cure such prejudice. *S&W Enters.*, 315

F.3d at 535-36 (*citing Reliance Insurance Company v. Louisiana Land & Exploration Company*,

110 F.3d 253, 257 (5th Cir. 1997)); *see also Samsung,* Civil Action No. 6:06-cv-00154-LED,

D/E 93, pg. 2.

 As set forth in legal standards enunciated above, the undue prejudice the defendants

would incur is a significant consideration in evaluating SynQor's motion to add the '083 patent

to this case. This is particularly true because SynQor would suffer no prejudice by exclusion, as

SynQor has an alternate remedy at its disposal—it can file a separate infringement action with its

new patent (which would obviously benefit from and use all the discovery from the current

action as well as additional discovery specific to the new action).  In fact, SynQor originally

informed certain defendants that it would be filing a separate and parallel action for the '083

patent, but apparently changed its mind as the motion deadline approached.

Even under Rule 15(a), a Court should deny a party's motion to amend its complaint

where the amendment would cause "undue prejudice to the opposing party."  *Foman v. Davis*,

371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Chitimacha Tribe of Louisiana*

*v. Harry L. Laws Co., Inc*., 690 F.2d 1157, 1163 (5th Cir.1982); *Ruotolo v. City of New York*,

514 F.3d 184, 191 (2nd Cir. 2008)(noting prejudice to the opposing party as "the most important

factor" and "the most frequent reason for denying leave to amend" (*quoting* 6 Charles Allen

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 1487, at

613 (1990 & 2007 Supp.))).  Thus, regardless of the standard the Court applies, SynQor's motion

should not be granted because it would cause significant undue prejudice to the defendants.

## III.    ARGUMENT

### A.    The Inevitable Jury Confusion Will Unfairly Prejudice The Defendants' Invalidity Case

Today, the defendants have a strong invalidity case against the patents in suit.  Their

invalidity case includes both anticipating prior art references as well as other references that are

so close to the patent claims that they render the claims obvious, based on a combination of the

references themselves and admissions of what was obvious in the asserted patents themselves.

Although the technology is complicated, the number of claims great, and the number of

potential prior art references which independently invalidate the asserted patent claims even

greater, the defendants are confident that they can persuasively present their case to the jury.

However, if SynQor is permitted to add the '083 patent, SynQor will argue to the jury

that the Patent Office has considered all of the defendants' prior art and has found SynQor's

"invention" patentable.  No jury instruction or argument can prevent the jury from conflating the various patents and patent claims and wondering whether, and to what extent, the allowance of the '083 claims over all of the art found by the defendants has an impact on the validity of the patents originally in this lawsuit.  This "gut instinct" is natural and understandable, but it is legally impermissible and highly prejudicial.  *See Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1370-71 (Fed. Cir. 2003) (noting that claims of differing scope must be considered separately for invalidity challenges).

The defendants will be rebutting SynQor's argument that the Examiner considered all the art submitted to the Patent Office as part of its invalidity case for the '083 patent.  As part of that rebuttal case, the defendants will be pointing out that there is no indication that the '083 Examiner performed any substantive review of the defendants' invalidity contentions or prior art. From the prosecution history of the '083 patent, it is clear that the '083 Examiner spent little if any time substantively reviewing the defendants' invalidity contentions and supporting references.  When SynQor sent the defendants' invalidity contentions to the Patent Office, it included *seventeen boxes* of prior art references, itemized in a 60 page Information Disclosure Statement ("IDS").  (*See* Exhibits A and B (at pg. 2)).  The '083 Patent Examiner did not even initial each entry of the IDS – he just typed his initials across the bottom of each sheet.  Each page of the IDS was marked as considered on the same date. (Exhibit C).

It is understandable that the '083 Examiner did not give more attention to the defendants' invalidity contentions directed to the three patents-in-suit.  The claims of the '083 patent have a different scope from the claims of the three patents-in-suit, which are all directed to a power supply system.  The '083 patent claims, by contrast, are directed to a single power converter and its technical features.  Thus, after noting that the defendants' contentions dealt with a different set of claims, the '083 Examiner probably set the contentions and prior art references aside with

little regard.  *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1379 (Fed. Cir. 2002) ("When determining the validity of the claims of a patent, each claim must be separately considered."). Thus, the '083 Examiner's cursory handling of the defendants' invalidity contentions and supporting prior art references has no legal impact on the defendants' invalidity case for the three patents-in-suit.

Though the '083 Examiner's actions are in no way a determination on the merits of the defendants' invalidity contentions, it will be extremely difficult for the jury to consider the Examiner's actions (which will be highlighted at trial) for the '083 patent, but properly disregard the '083 Examiner's actions entirely when considering the current patents-in-suit.

Even more problematic, some jurors could believe that the Patent Office did consider all the art for all the patents put before them.  Such an erroneous belief (which would be hard to uncover) would be highly and unfairly prejudicial. *See Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1467 (Fed. Cir. 1990)("This burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application."); *see also Cummins-Allison Corp. v. SBM Co., Ltd*, 2009 WL 763926, *6 (E.D. Tex. March 19, 2009)("There is little reason to believe that Defendants could craft a winning invalidity defense based on prior art already considered by the PTO.").

The '083 Examiner's handling of the defendants' invalidity contentions, and the jury's inevitable reaction to it, will prevent the defendants from receiving a fair trial on their invalidity defense for the three patents currently in suit.  SynQor's motion for leave should therefore be denied.

### B.     Other Factors Counsel the Denial of SynQor's Motion

#### 1.     SynQor Will Suffer <u>No</u> Prejudice From Denial Of The Motion

SynQor's motion should further be denied because, while the defendants would suffer significant prejudice from the addition of the '083 patent, SynQor has a less prejudicial, equally effective remedy at its disposal.  SynQor can simply bring the '083 patent in another case, which would produce a much more efficient and fair outcome.

This is no run-of-the-mill motion to add a new patent.[1]  As explained above, because SynQor already submitted the defendants' invalidity contentions to the '083 Examiner, the inclusion of the '083 patent will have an unusual and significant impact on the defendants' invalidity case.

In stark contrast to the prejudice the defendants will suffer if the '083 patent is added, there is ***no harm*** to SynQor if its motion is denied.  SynQor can simply assert this patent in another lawsuit.   Though the accused products in both cases may be the same, judicial efficiency can be easily achieved by coordinating discovery between the cases.  *See Fenner Investments, Ltd. V. 3Com Corp.,* 2008 WL 4876816, *3 (E.D. Tex. 2008) (denying a motion to consolidate cases because judicial efficiency can still be served where "discovery efforts can be coordinated by the parties"); *see also Samsung*, Civil Action No. 6:06-cv-00154-LED, Docket Entry 93, pg. 3 (E.D. Texas, May 4, 2007) (noting that in cases where discovery requirements for different patents overlap, judicial efficiency may be served by filing a separate suite and entering into an agreement to coordinate discovery).

---

[1] Though SynQor asserts that Courts commonly grant leave to amend complaints to add new patents, the two cases SynQor cites from the Eastern District of Texas address ***unopposed*** motions for leave to amend.  (SynQor Br., D/E 263 at pg. 4, citing *Sky Techs. LLC v. SAP AG et al.,* 2:06-CV-440, D/E 30 and *Mediostream, Inc. v. Acer America Corp. et al.,* 2:07-CV-376, D/E 30)).  These cases are readily distinguishable, as the defendants here ***do*** oppose SynQor's motion, and for good reason.

### 2. The Infringement Issues Are Sufficiently Distinct To Benefit From Separate Actions

The '083 patent, unlike the three patents-in-suit, has claims directed to a single power converter rather than a power supply system.  Thus, whereas the current lawsuit is based on allegations of indirect infringement (because the defendants sell components and not the accused systems), the '083 patent introduces issues of direct infringement.

If the '083 patent is added to the case, the jury will be required to distinguish between the elements of direct and indirect infringement, and apply different law for their infringement analysis depending on which asserted patent they are considering.  It would be much simpler for the jury, the Court, and the parties to have a single trial for the indirect infringement allegations arising from the three patents-in-suit, and a separate trial for the direct infringement allegations arising from the new '083 patent.

The claims of the '083 patent also add additional technical complexity to the case.  Its claims include new technical elements not found in the asserted claims of the patents-in-suit.  For example, all independent claims of the '083 patent require a power converter with at least one isolating step-down transformer "that is not driven into saturation," a feature that is not recited in any of the asserted claims of the three patents-in-suit.  (*See* '083 patent: claim 1, col. 16 lines 62-63; claim 22, col. 18 lines 66-67; claim 39, col. 20, line 46; and claim 49, col. 22, line 11).  Independent claims of the '083 patent also recite other new elements such as

> a first controlled rectifier of the plural controlled rectifiers being conductive during the first portion of the switching cycle and a second controlled rectifier of the plural controlled rectifiers being conductive during the second portion of the switching cycle, there being a short time, during a transition between the portions, when the first controlled rectifier and the second controlled rectifier are both off and their corresponding uncontrolled rectifiers are both conducting. ('083 patent: claim 1, col. 17 lines 21-29 and claim 39, col. 20 line 62 to col. 21 line 3).

Page  12

As SynQor has already expressed, adding additional technology to this case can only further complicate the issues and confuse the jury.  (D/E 111, SynQor's Response in Opposition to Lineage's Motion to Amend ("The jury who will hear this case will have enough to tackle with the complexity of the subject matter of the SynQor Patents, the numerous infringing devices of the eleven different infringers and the corresponding damages.").

### 3.      SynQor's Actions Require A New Extensive Invalidity Search

In addition to the new technical hurdles the jury would face, the defendants would also be obligated to launch an entire new invalidity search for new prior art references disclosing the new claim elements of the '083 patent.  Rather than the eight months the defendants had for their invalidity contentions at the beginning of the case, now the defendants will have only a small window to locate new references, analyze the prior art, and prepare their new invalidity contentions.  Given that SynQor has put eight months of research before the Patent Office, fairness dictates that the defendants receive similar time to perform new searches targeted at the '083 patent that will yield new prior art.  Such a reasonable and fair schedule would be more appropriate in a separate lawsuit.

### 4.      The '083 Patent Raises New And Distinct Claim Construction Issues

With its many new claim terms, the '083 patent will add a myriad of new issues to an already substantial claim construction process, perhaps even necessitating a second *Markman* hearing.  *See Datamize, Inc. v. Fidelity Brokerage Services, LLC*, 2004 WL 1683171, *2 (E.D. Tex. 2004)(noting that even two patents that share the same priority date, specification, and inventor will have "different claims, claim limitations, claim scopes, and prior art citations for consideration by the Court during any claim construction, infringement, or validity determinations").  "[W]here there are even small differences in the language of claims in related patents, the claim language in each patent should be construed independently." *Id.* At 6 (*citing

*ResQnet.com. Inc. v. LANSA, Inc.*, 346 F .3d 1374, 1384 (Fed.Cir.2003)).  Thus, adding the '083

patent, which has claims with a very different scope from the patents-in-suit, would impose yet

another undue hardship on both the parties and the Court.

> **5.      SynQor Intends To File Further Motions To Amend Raising Further Complications**

And as yet another complication, SynQor does not intend to end its quest to add new

patents here.  Yesterday, SynQor filed a yet another new motion to add yet another patent, U.S.

Patent No. 7,564,702 (the "'702 patent") to this case.  (D/E 265).  Though SynQor has

represented that it has no other "currently allowed" applications (SynQor Br., FN 1), SynQor has

failed to inform the court about yet a ***third*** related patent application, filed 4 days after the

application for the '083 patent and on the same day as the application for the '702 patent, that is

still pending before the Patent Office.  (Ex. D).  SynQor also fails to mention that on June 5,

2009, it filed yet another two new continuations claiming the same priority date as the patents-in-

suit (Application Nos. 12/478,977 and 12/478,942).  (*See* Ex. E).

This case has already been pending for a year and a half with three patents-in-suit.  It

does not make sense to continue to expand the scope of this case to incorporate new patents, new

infringement allegations, and new technology, particularly in light of the undue prejudice the

defendants would incur.

## IV.      CONCLUSION

For the foregoing reasons, Defendants Delta Electronics, Inc., Delta Products Corp.,

Murata Electronics North America, Inc., Murata Manufacturing Co., Ltd., Murata Power

Solutions, Inc., Power-One, Inc., and Bel Fuse Inc. respectfully request that SynQor's Motion for

Leave to Amend Its First Amended Complaint be DENIED.

Dated:  July 22, 2009                    Respectfully submitted,

                                         By:  */s/ E. Glenn Thames, Jr.*
                                              E. Glenn Thames, Jr.
                                              State Bar No. 00785097
                                              glennthames@potterminton.com
                                              POTTER MINTON
                                              A Professional Corporation
                                              110 North College Avenue, Suite 500
                                              Tyler, TX 75702
                                              (903) 597-8311 (Telephone)
                                              (903) 593-0846 (Facsimile)

                                              Alan D. Smith, BBO#629034
                                              Steven R. Katz, BBO#642732
                                              Whitney A. Fellberg, BBO#663599
                                              Kevin K. Su, BBO#663726
                                              FISH & RICHARDSON P.C.
                                              225 Franklin Street
                                              Boston, MA 02110-2804
                                              617-542-5070 (Telephone)
                                              617-542-8906 (Facsimile)

                                         Counsel for Defendants
                                         DELTA ELECTRONICS, INC.,
                                         DELTA PRODUCTS CORP.,
                                         MURATA ELECTRONICS NORTH
                                         AMERICA, INC.,
                                         MURATA MANUFACTURING CO., LTD.,
                                         MURATA POWER SOLUTIONS, INC., AND
                                         POWER-ONE, INC.

                                         By:  */s/ Steven N. Williams*
                                              *(by E. Glenn Thames Jr., with permission)*
                                              Steven N. Williams
                                              Texas State Bar No. 21577625
                                              williams@slater-matsil.com
                                              SLATER & MATSIL, LLP
                                              17950 Preston Road, Suite 1000
                                              Dallas, Texas 75252
                                              Telephone: (972) 732-1001
                                              Facsimile: (972) 732-9218

                                         Counsel for Defendant
                                         BEL FUSE INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 22, 2009 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by first class mail.


*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

22233623.doc