**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SYNQOR, INC, | § | |
| | § | |
| v. | § | CASE NO. 2:07-CV-497-TJW-CE |
| | § | |
| ARTESYN TECHNOLOGIES, INC., ET. AL. | § | |

**<u>ORDER</u>**

Before the Court is Defendants' Joint *Daubert* Motion to Preclude the Testimony of Brett

L. Reed (Dkt. No. 561).  The Court has carefully considered the parties' submissions, the record,

and the applicable law.  For the following reasons, the Motion is DENIED.

**I.     BACKGROUND AND PROCEDURAL POSTURE**

The plaintiff in this case seeks damages in the form of lost profits and a reasonable

royalty for patent infringement.  Mr. Brett Reed, an economist and Director of Competition

Economics, LLC, is the plaintiff's damages expert.  The defendants in this case have filed a joint

*Daubert* motion challenging Mr. Reed's opinions.  Specifically, the defendants challenge the

benchmark used by Mr. Reed to calculate the "but for" prices for the plaintiff's bus converters.

The defendants also contend that Mr. Reed's lost profit opinion marginalizes the law of demand

and assumes without analysis that the demand would remain at historic levels.  In addition, the

defendants argue that Mr. Reed's damages analysis incorrectly includes products on which the

plaintiff has not offered any evidence of infringement.  Regarding Mr. Reed's reasonable royalty

analysis, the defendants contend that Mr. Reed's opinion unreasonably assumes that the

defendants would agree to pay a royalty greater than their profits.

A review of Mr. Reed's report finds that he conducted a *Panduit* analysis to determine that the plaintiff is entitled to lost profits.  In his analysis, Mr. Reed concludes that the benchmark for the "but for" pricing should be $70 per unit.[1]  This benchmark is based entirely on the plaintiff's last three orders to a single customer, Cisco.  Mr. Reed then uses the benchmark to establish "but for" prices ranging from $60 to $107 per unit for the plaintiff's bus converters based on the converter's power output.  (Dkt. No. at 561-17 at 2.)  Mr. Reed's calculations result in at least eleven "but for" prices that are higher than the actual average selling price for that specific converter.  (Dkt. No. at 561-16 at 2.)  Mr. Reed also assumes that the "but for" price would remain constant for the relevant damages period.  (Dkt. No. at 561-17 at 2.)

Regarding reasonable royalty, Mr. Reed's *Georgia-Pacific* analysis concludes that a hypothetical negotiation would result in a two-tier royalty structure.  Mr. Reed's first tier includes a reasonable royalty of 50% of the "but for" prices calculated in his lost profits analysis.  Based on each of the defendants' actual average sales price of its bus converters, this equates to an effective reasonable royalty of anywhere between 30.7% and 130.1%.  (Dkt. No. at 561-26 at 2.)  Mr. Reed's second tier includes a reasonable royalty of 20% of the lowest priced BusQor product in the "but for" world, which equates to $12 per unit.  Mr. Reed opines that the second tier is warranted because the plaintiff would have authorized the defendants to make up any shortfall in the plaintiff's ability to meet customer requirements.

## II.    LEGAL STANDARD

The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet the relevancy and reliability threshold requirements. In this role, the trial court determines the

---

[1] Mr. Reed uses this benchmark in both his lost profit and reasonable royalty analysis.

2

admissibility of expert testimony based on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Accordingly, opinion testimony is not admissible unless: (1) the witness is qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702; (2) the witness' reasoning or methodology underlying the opinion testimony is scientifically reliable, *Daubert*, 509 U.S. at 592-93; and (3) the testimony is relevant—that is, it must assist the trier of fact to understand the evidence or to determine a fact at issue. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591.

To satisfy the reliability prong of *Daubert*, an expert's opinion testimony must be based upon "sufficient facts or data" and must be "the product of reliable principles and methods" that are "reliably" applied "to the facts of the case." Fed. R. Evid. 702 & advisory committee note. When evaluating the reliability of the proffered testimony of an expert, "Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d 851, 853 (9th Cir.1997) (citing *Daubert,* 509 U.S. at 590). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)). "But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). However, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may

3

go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).   That is, a trial court is not permitted under *Daubert* to "transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

## III.   DISCUSSION

The defendants first challenge Mr. Reed's selection of a $70 per unit benchmark.  The defendants contend that Mr. Reed's "low volume, high price" benchmark ignores the pricing of nearly 125,000 units sold by the plaintiff as well as the pricing of over 3.4 million other bus converter products sold by the defendants worldwide.  The defendants argue that Mr. Reed's analysis results in "but for" prices that are 1.5 to 3.0 times the actual prices obtained by the plaintiff or by the defendants for comparable products.  The defendants do not, however, dispute that Mr. Reed's $70 benchmark price is based on actual sales that occurred within the relevant damages period.  Thus, the facts of this case are somewhat distinguishable from *O2 Micro Int'l Ltd v. Beyond Innovation Tech.*, No. 2:04-CV032, 2005 WL6440628 (E.D. Tex. Dec. 9, 2005) ("*Bitek*").  In *Bitek,* the plaintiff's expert relied on sales prices that occurred before the alleged infringement, even though those prices had dropped by 300% at the time of the alleged infringement.  In this case, the defendants do not argue that Mr. Reed selected a benchmark that is outside the relevant damages period.  Instead, defendants argue that Mr. Reed cherry-picked a high price based on a few sales of one product to one customer in one year, and then applied that price (adjusted for power output) across the board.  Plaintiff responds that Mr. Reed's chose this benchmark because it more closely approximated a "but for" world where a customer is willing to pay a higher price because of a shortage of suppliers.  Thus, the defendants' initial dispute is

not that Mr. Reed's benchmark is not based on any of the historical pricing data, but instead that Mr. Reed incorrectly assumed that these few sales represent a "but for" world.

The undersigned is of the opinion that, at this point in the case, *Daubert* does not compel the exclusion of Mr. Reed's testimony.  Instead, the Court finds that it cannot determine from the evidence presented thus far whether or not Mr. Reed's assumptions lapse into "pure speculation" or are grounded in "sound economic and factual predicates."  *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1309 (Fed. Cir. 2006) (quoting *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) and *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002)).  If it is the latter, then Mr. Reed's testimony should not be excluded and defendants are free to challenge his assumption on cross-examination and/or by the presentation of contrary evidence.  For instance, it is not clear to the Court whether other companies that are not named as defendants in this lawsuit, but that are listed as suppliers in the market, could have provided non-infringing alternatives to the defendants' accused products.  Indeed, the plaintiff has conceded that this is not a two-supplier market case and Mr. Reed's report lists a number of non-party suppliers.  (Dkt. No. at 561-2 at 2.)  Likewise, it is not clear to the Court whether a fully regulated DC-DC converter would be an acceptable non-infringing alternative.

To be sure, if it is shown that a non-infringing alternative did exist, then Mr. Reed's *Panduit* analysis would not be grounded in factual predicates because it assumes that there are not any non-infringing alternatives.  To make this assumption, Mr. Reed relies solely on the information provided by plaintiff's technical experts, Dr. Leeb and Dr. Schlecht.  Whether Dr. Leeb and Dr. Schlecht have any factual basis for making this assertion will be tested at trail. Therefore, at this point in the case, the undersigned is not persuaded that *Daubert* requires the

exclusion of the expert's opinion and therefore DENIES the defendants' motion to exclude Dr. Reed's testimony relating to the $70 benchmark.

As in *Bitek*, however, that the Court has denied the *Daubert* motion is not to say that the damages model is free from criticism or that Mr. Reed's opinions, standing alone, would support a verdict.  To the contrary—and with due regard for the "hypothetical" nature of both the lost profits analysis and reasonable royalty calculation—the expert report may indeed lack sufficient analysis that the market would have supported the calculated "but for" prices.  As stated in *Bitek,* absent evidence at trial that the market would have accommodated the determined benchmark, the damages model may lack the sound economic and factual predicates necessary to justify its consideration by the jury.  *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302 (Fed. Cir. 2002).  For instance, acceptable non-infringing alternatives may provide a strong indication that the market would not have accommodated the determined benchmark.  The presiding judge should evaluate the evidence at trial and ultimately determine at that time whether or not the underlying factual predicates have been sufficiently developed to warrant the submission of Mr. Reed's opinions to the jury.

The defendants next contend that Mr. Reed's lost profit analysis marginalizes the law of demand and assumes without analysis that the demand would remain at historic levels.  Specifically, the defendants argue that Mr. Reed failed to create a model to test price elasticity at the calculated "but for" prices.  *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, 246 F.3d 1336, 1357-58 (Fed. Cir. 2001) ("[I]n a credible economic analysis, the patentee cannot show entitlement to a higher price divorced from the effect of that higher price on demand for the product…").  The plaintiff responds that Mr. Reed did take into account elasticity by

excluding certain units from his lost profits base.  Moreover, the plaintiff argues that even if Mr.

Reed found the market to be inelastic, that would not be a basis for excluding his testimony.

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1379 (Fed. Cir. 2003) ("Although we have

recognized that an inelastic market may be 'rare,' it was for the jury to determine whether this

was such a case based on the evidence before it.") (internal citation removed).

Again, assuming that the information provided to Mr. Reed by Dr. Leeb and Dr. Schlecht

is supported by proper factual predicates, Mr. Reed's reliance on this information does not

compel the exclusion of Mr. Reed's determination of the "but for" prices.  To be sure, it is not

clear to the Court if this case involves one of the rare circumstances where the patentee is

entitled to a higher price divorced from the effect of that higher price on demand for the product.

Thus, the undersigned is not persuaded that, at this point in the case, *Daubert* requires the

exclusion of the expert's opinions.  The undersigned therefore DENIES defendants' motion to

exclude Dr. Reed testimony on his "but for" pricing model.  Again, absent evidence at trial that

the market would have accommodated the calculated "but for" prices, the damages model may

lack the sound economic and factual predicates necessary to justify its consideration by the jury.

The presiding judge should evaluate the evidence at trial and ultimately determine at that time

whether or not the underlying factual predicates have been sufficiently developed to warrant the

submission of Mr. Reed's "but for" prices to the jury.

The defendants next contend that Mr. Reed's royalty opinion unreasonably assumes that

the defendants would agree to a royalty greater than their profits.  Specifically, the defendants

contend that Mr. Reed use of his $70 benchmark price results in a multi-level royalty that is

greater than the defendants' profit margins, and in many cases even greater than their actual

selling prices.  The plaintiff responds that the defendants do not dispute that Mr. Reed followed

the correct methodology by employing the *Georgia-Pacific* factors.  The plaintiff further argues

that Mr. Reed was correct not to put a cap on damages because the profits earned by the

defendants in the eroded market that they allegedly created should not be used to set the limits on

damages.  Again, assuming that the information provided to Mr. Reed by Dr. Leeb and Dr.

Schlecht is supported by proper factual predicates, Mr. Reed's reliance on this information does

not compel the exclusion of "but for" pricing in the reasonable royalty calculation.  The

undersigned therefore DENIES defendants' motion to exclude Dr. Reed testimony on his "but

for" pricing model as it relates to the reasonable royalty calculation.

   The plaintiff seeks to charge the actual number of the defendant's sales (as is customary

in the context of a reasonable royalty) with a royalty rate derived largely from a non-eroded

price.  For one of the defendants, this non-eroded price results in an effective royalty of 130.1%

of the actual average price.  (Dkt. No. at 561-26 at 2.)  As a result, the damages model runs the

risk of being too speculative to support a verdict.  In *Bitek,* this Court explicitly stated that it

would not permit experts to present a price erosion model through the guise of a reasonable

royalty analysis.  Accordingly, the presiding judge should evaluate the evidence at trial and

ultimately determine at that time whether or not the underlying factual predicates have been

sufficiently developed to warrant the submission of Mr. Reed's reasonable royalty analysis to the

jury.

   The defendants also contend that Mr. Reed's lost profit opinion fails to account for the

relative market share of the parties. Specifically, the defendants argue that it was wrong for Mr.

Reed to assume that the plaintiff would obtain 100% of the defendants' sales.  The plaintiff

responds that Mr. Reed did not assume that the plaintiff would obtain 100% of the defendants' sales because nearly 22% of the accused units in Mr. Reed's damage base are units on which it seeks only a reasonable royalty.  The plaintiff further argues that Mr. Reed concluded that the defendants, collectively, supply the vast majority of the unregulated and semi-regulated bus converters that are used in products sold in the United Stated.  Again, assuming that the information provided to Mr. Reed by Dr. Leeb and Dr. Schlecht is supported by proper factual predicates, Mr. Reed's reliance on this information does not compel the exclusion of his lost profit analysis regarding market share.  Therefore, at this point in the case, the undersigned is not persuaded that *Daubert* requires the exclusion of the expert's opinion and therefore DENIES the defendants' motion to exclude Mr. Reed's lost profit analysis as it relates to relative market share.

Finally, Defendants contend that Mr. Reed included products in his damages analysis on which the plaintiff has not offered evidence of infringement.  Specifically, the defendants point to Mr. Reed's inclusion of tens of thousands of units sold to various "Distributors and Small Customers."  The defendants contend that the products of these distributors and small customers were not included in Dr. Leeb's infringement analysis.  Likewise, the defendants also argue that the sale of 40,000 units by Delta to Nortel is another group of products not analyzed by Dr. Leeb.  Similarly, Defendants argue that Dr. Leeb had no opinion as to infringement by HP using Lineage's bus converters, yet these sales were also included in the damages.  The plaintiff responds by stating that the defendants are simply ignoring part of Dr. Leeb's analysis, and that Dr. Leeb was able to trace the vast majority of accused bus converters to infringing end products. The plaintiff further argues that even though not every accused product could be traced, Dr. Leeb

9

reasonably concluded that Defendants' unregulated and semi-regulated bus converters are always incorporated in end products that meet the limitations of one or more claims of the asserted patents.  Again, assuming that Dr. Leeb's assumptions are supported by sufficient circumstantial evidence at trial, then Mr. Reed's reliance on this information does not compel the exclusion of these sales from his damage model.  Therefore, at this point in the case, the undersigned is not persuaded that *Daubert* requires the exclusion of the expert's opinion and therefore DENIES the defendants' motion to exclude Dr. Reed's testimony regarding the sales related to "Distributors and Small Customers."

**IT IS SO ORDERED.**

SIGNED this 13th day of December, 2010.


_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE