# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SYNQOR, INC.<br><br>                     Plaintiff,<br><br>    v.<br><br>ARTESYN TECHNOLOGIES, INC.,<br>ASTEC AMERICA, INC.,<br>BEL FUSE INC.,<br>CHEROKEE INTERNATIONAL CORP.,<br>DELTA ELECTRONICS, INC.,<br>DELTA PRODUCTS CORP.,<br>LINEAGE POWER CORP.,<br>MURATA ELEC. NORTH AMERICA, INC.,<br>MURATA MANUFACTURING CO., LTD.,<br>MURATA POWER SOLUTIONS INC.<br>POWER-ONE, INC.<br><br>                     Defendants. | Civil Action No. 2:07-CV-497-TJW-CE<br><br>**JURY TRIAL DEMANDED** |

**SYNQOR, INC.'S REPLY TO DEFENDANTS' JOINT OPPOSITION TO
<u>SYNQOR'S BILL OF COSTS</u>**

# INTRODUCTION

On January 12, 2011, SynQor, Inc. ("SynQor") filed its Bill of Costs in response to the Court's December 29th Judgment in SynQor's favor. SynQor's Bill of Costs was timely and the costs SynQor seeks were necessary for the preparation and presentation of SynQor's successful case against Defendants. Defendants' objections to these costs are meritless and merely demonstrate Defendants' continued attempt to avoid the consequences of their infringement.

On January 18, 2011, counsel for the Fish Defendants wrote to SynQor and raised largely the same objections discussed in Defendants' Opposition brief (Dkt. 958). Ex. 1. However, while SynQor was preparing its response to that letter, and without first conferring with SynQor, Defendants filed a formal opposition to SynQor's Bill of Costs with the Court. In response to the concerns raised by Defendants, SynQor is supplementing its currently pending Bill of Costs. Specifically, SynQor is no longer seeking certain costs associated with transcripts that were obtained for this case. And, SynQor has omitted charges related to the *Lineage v. SynQor* matter that were inadvertently included. However, as discussed below, the remainder of Defendants' objections are meritless and SynQor is entitled to each of the costs documented in its Supplemental Bill of Costs.

# ARGUMENT

## I.   SynQor's Bill of Costs Is Not Premature.

Defendants argue that SynQor's Bill of Costs is premature because the December 29th Judgment was not a final judgment and did not award SynQor costs. Dkt. 958 at 2. But Local Rule 54 provides, in relevant part:

> Unless otherwise provided by statute or by order of the presiding judge, the bill of costs must be filed with the clerk and served on any party entitled to such service no later than 14 days after the clerk enters the judgment on the docket.

And although the December 29 Judgment did not specifically award costs, this Court has held that "[p]ursuant to Federal Rule of Civil Procedure 54(d), costs are to be awarded to the prevailing party as matter of course, unless the Court directs otherwise." *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 686 (E.D. Tex. 2007). Because the court did not direct otherwise, SynQor had a good faith basis to believe the 14 day timeline was triggered by the December 29 Judgment and therefore filed its Bill of Costs on January 12. In the event the Court concludes that the December 29 Judgment did not trigger the obligations of Local Rule 54, SynQor respectfully requests that the Court allow SynQor to resubmit its Bill of Costs within 14 days of a subsequent judgment awarding costs.

**II.　　SynQor's Bill of Costs Contained a Simple Clerical Error.**

Defendants argue that "SynQor's Bill of Costs must be considered to request only an award of $380,103.57" instead of the $626,484.60 requested by SynQor. Dkt. 958 at 2. This specious argument is based on an obvious clerical error on Form AO 133. Form AO 133 is an official form provided by the United Stated Federal Courts website, http://www.uscourts.gov. This Form is a "fillable PDF," which means that the user simply fills in the amounts requested for each category and the Form automatically calculates the aggregate amount sought in the "TOTAL" field. SynQor inputted the appropriate amounts in each of the fields on Form AO 133, as evidenced by the auto-calculated total. This included $246,381.03 in the transcripts field. However, due to an inadvertent error when printing this form for submission to the Court, this amount is not visible on the printout. Had SynQor omitted this amount, a "0.00" would appear in the transcripts field rather than a blank and the total would reflect this "0.00."

Moreover, the $246,381.03 sought for transcripts was appropriately included in the summary of SynQor's Bill of Costs submitted as Appendix A as well as Exhibit 1 to that Appendix. Defendants were also made aware that SynQor sought transcript costs in the draft bill

3

of costs sent to them ahead of the Parties' meet and confer on January 11.  There can be no

dispute that SynQor's Bill of Costs unambiguously included transcript costs.  Defendants'

attempt to argue otherwise lacks credibility and elevates form over substance.  Regardless, this

clerical error has been corrected in SynQor's Supplemental Bill of Costs, filed herewith.

**III.     The Costs Sought By SynQor Were Necessarily Incurred For This Case and Are Recoverable Under 28 U.S.C. § 1920.**

As a preliminary matter, Defendants' arguments concerning expedited fees, rough drafts,

litigation support discs, delivery, and parking fees are moot as SynQor has omitted these costs

from its Supplemental Bill of Costs.  SynQor has also removed charges from the *Lineage v.

SynQor* matter that were inadvertently included in its original Bill of Costs.  The Court should

award SynQor the costs listed in its Supplemental Bill of Costs because each of these costs was

necessarily incurred for SynQor to present its case at trial.

**A.     SynQor Should Be Awarded Costs For Live Note Fees That Were Incurred At Defendants' Request.**

Defendants have objected to reimbursing SynQor for the cost of Live Note (real-time)

feeds at depositions.  However, SynQor only incurred these charges because Defendants insisted

on attending certain depositions remotely and utilizing teleconference and Live Note technology.

SynQor's counsel did not use Live Note feeds and would not have incurred these costs but for

Defendants' insistence.  Indeed, the correspondence between counsel make clear that

Defendants—and not SynQor—demanded and used Live Note technology.  For example:

| Quotation | Correspondence |
|---|---|
| We currently plan to attend (at least) Juniper, Cray and Brocade by telephone. Could you please arrange for LiveNote and teleconferencing in the deposition room? | Aug. 9, 2010 e-mail from Kevin Su to David DeZern (Ex. 2.) |
| I plan to "attend" the Murata/MPS, Cherokee and Lineage depositions via Live Notes.  Please make sure that the court reporter will be set up for a Live notes feed | Oct. 20, 2009 e-mail from Steven Williams to Mike Hatcher et al. (Ex. 3.) |
| We would like a LiveNote feed at least for the Artesyn/Astec | Nov. 23, 2009 e-mail from |

| | |
|---|---|
| deposition. | Kevin Su to Mike Hatcher (Ex. 4.) |
| Please provide my name and e-mail and Bob's name and e-mail to the court reporter for LiveNote (or equivalent) and please provide a call-in number when available. | Oct. 31, 2009 e-mail from Jeff Andrews to Mike Hatcher (Ex. 5.) |
| Astec and Artesyn will be attending these depositions remotely via telephone and LiveNote, like we did with the previous depositions of the former Boschert employees. | Oct. 16, 2009 e-mail from Jeff Andrews to Mike Hatcher et al. (Ex. 6.) |
| We will be setting-up a Live Notes connection for Dell and Unisys. Can you arrange for a conference call-in number for these? | Aug. 5, 2010 e-mail from Jeff Andrews to David DeZern et al. (Ex. 7.) |
| The court reporter should be contacting everyone that has used LiveNote to see if they want a connection. | Mar. 4, 2010 e-mail from Mike Hatcher to Defendants' counsel (Ex. 8.) |
| The court reporter should be contacting everyone that has used LiveNote to see if they want a connection. Please let me know if anyone wants a conference dial-in. Please note that, if anyone wants LiveNote via the Internet or a conference phone, the hotel charges for such (the connection and/or the phone) are significant and we would expect the requesting party to pay the cost. | Mar. 22, 2010 e-mail from Mike Hatcher to Defendants' counsel (Ex. 9.) |

Defendants should not be allowed to argue that such charges were unnecessary when it was Defendants who demanded SynQor incur these costs.

### B. SynQor Should Be Awarded Costs For Transcripts, Including Video Deposition Transcripts That Were Necessary For Trial.

SynQor should be permitted to recover costs for its written and video deposition transcripts that were necessary for this case. Section 1920 states that a prevailing party may be awarded "[f]ees for printed *or electronically recorded* transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920 (emphasis added). Indeed, Defendants have admitted that, "video deposition costs and deposition transcripts are both recoverable costs." Dkt. 958 (citing *Lear Siegler Servs. v. Ensil Int'l Corp.*, 2010 WL 2595185 (W.D. Tex. June 23, 2010)). Although, in some cases, courts have opted to award only one or other, the circumstances of this case justify the award of both video and printed transcript costs.

Video deposition transcripts were necessary because SynQor needed the ability to most effectively present testimony from witnesses who may have been unable to appear at trial, including the Defendants' many Rule 30(b)(6) designees and the various representatives for the customers/direct infringers.  Without a video, deposition testimony can be difficult for the jury to follow.  And often, simply reading a printed transcript does not convey the full meaning of the words spoken at a deposition because the jury is unable to observe the actual witness's inflection and body language.  All of the deponents at issue were listed on the parties' witness lists.  For their part, Defendants listed nearly 100 witnesses, and Defendants were unwilling or unable to narrow their list of witnesses for trial.  As a consequence, SynQor needed to be prepared to cross examine each and every one of Defendants' potential witnesses.  Because many or all of Defendants' witnesses made statements at trial that were inconsistent with their deposition testimony and/or the testimony of the Defendants' Rule 30(b)(6) designees, SynQor did, in fact, use  video transcripts to impeach those witnesses.  Like SynQor, Defendants  chose to play video deposition testimony at trial, supporting the proposition that video depositions were necessarily obtained for presentation of this case.

Contrary to Defendants' argument, no deposition in this case was taken "more for convenience, rather than necessity."  Dkt. 958 at 3.  Defendants fail to give a reasonable explanation of why any party would take a deposition "for convenience."  The fact that SynQor did not play testimony from each deposition at trial does not mean that those depositions were unnecessary.  Indeed, the realities of litigation mean that parties must take discovery in a wide variety of areas from many individuals to find the proofs they require for trial.[1]  Both parties

---

[1] Indeed, the Federal Rules of Civil Procedure recognize that the scope of discovery must be broad and therefore discovery is appropriate into any matter that is relevant.  Relevant

made decisions about which testimony to play as trial unfolded. Moreover, the Court's summary judgment rulings in SynQor's favor negated the need to play certain testimony at trial. But SynQor had no way of knowing of this when it took its depositions, and it needed the depositions to properly present the evidence for summary judgment. Each deposition taken in this case was necessary for SynQor to prepare its case regardless of the specific testimony played at trial.

### C. SynQor Should Be Awarded the Exemplification and Photocopying Costs Defendants Forced SynQor to Incur.

SynQor was forced to incur significant copying and exemplification charges as a result of Defendants' infringement. Each of these charges was necessarily incurred for the preparation of SynQor's case. Indeed, SynQor's counsel submitted a declaration with SynQor's Bill of Costs stating:

> I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed.

Dkt. 915 (SynQor's Bill of Costs, Form AO 133) at 1.

Furthermore, SynQor has provided a clear and concise summary of the costs sought in Appendix A and has categorized these costs to show why each was necessarily incurred. Specifically, SynQor has broken its copying and exemplification charges into the following discrete categories: (1) Copies made for depositions, (2) Copies made for document production and discovery, (3) Exemplification of documents in electronic format, (4) Copies made for hearing or trial preparation and exhibits, and (5) Charges for trial audio/visual professional services. In addition, SynQor has provided detailed data from its law firm's internal accounting system (reflected in Appendix A) as well as the actual invoices from these charges (reflected in

---

information is defined as anything reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

the Exhibits to Appendix A). It is difficult to imagine how SynQor could provide a better showing of necessity without accounting for each individual piece of paper, which this Court has held is unnecessary. *Finisar Corp. v. DirecTV Group, Inc.*, No. 1:05-CV-264, 2006 WL 2699732, *1 (E.D. Tex. Aug. 4, 2006) ("The prevailing party does not need to specifically identify every xerox copy, but does need to make some demonstration that the copies were necessarily obtained for this case.").

Defendants argue that SynQor seeks costs for "multiple copies." Dkt. 958 at 5. But Defendants fail to provide any factual support for deducting any copying costs based on this argument. The only charges for "multiple copies" of which SynQor is aware were made at Defendants' or the Court's request. Specifically, SynQor made "multiple copies" of certain deposition exhibits because Defendants' counsel requested that copies be made available. For example, at the deposition of Christopher Widmann, Defendants' counsel complained:

> MR. ANDREWS: If I could just interject to make this clear on the record, that plaintiff's counsel has not brought a copy of the exhibits being used today for reference of defense counsel. And now that we're referring to spreadsheets by page number, we have obtained native copies of Excel documents. However, we don't have the pagination that you do, and it's going to be very difficult for us to follow along with the transcript.

Ex. 10 (Excerpted pages of August 11, 2010 Widmann deposition transcript). As a result of these types of exchanges, SynQor made copies of deposition exhibits for opposing counsel.

And, SynQor made a second set of trial exhibits pursuant to the Court's November 1, 2010 Order Regarding Exhibits (Dkt. 562). That order provided that "[o]n the first day of trial, each party is required to have on hand . . . One (1) copy of their respective original exhibits" for the Court. Dkt. 562 at 1. SynQor also needed to have one copy of its trial exhibits for its use and used both copies of exhibits at the preadmission hearings regarding exhibits so that the Court

8

and SynQor and/or Defendants could both view the exhibits at issue. Both sets of trial exhibits were necessary for the presentation of SynQor's case.

Defendants also argue that SynQor has included non-taxable costs in its Bill that were for "travel." Dkt. 958 at 6. SynQor has not included travel charges in its Bill of Costs. The charges to which Defendants point are for *copying* that was done while traveling—not expenses associated with attorney travel. Reference to a particular trip in the description field of a copying charge line item is simply the result of the way the records were logged in the accounting system. Contrary to Defendants' assertions, SynQor does not seek to recover for postage, facsimiles, electronic legal research, or travel expenses. Dkt. 958 at 6.

Defendants incorrectly argue that SynQor has included "trial boards and demonstratives" in its Trial Audio/Visual Professional Services category. Dkt. 958 at 7. SynQor specifically omitted charges for such graphic "boards" from its original Bill of Costs. In fact, the notes on page 18 of Appendix A state explicitly that SynQor is not seeking the entire total of a December 24, 2010 invoice that included mounted and laminated boards. *See* Dkt. 915-1 at 18 ("Not seeking costs for mounted and laminated boards"). Although the total of the December 24 invoice is $24,801.25, SynQor omitted the $4,550 attributable to mounted and laminated boards.

The remainder of the costs sought in the Trial Audio/Visual Professional Services category are recoverable. SynQor was forced to incur significant trial audio/visual professional services expenses in order to effectively put on its case. These costs are not, as Defendants argue, "exorbitantly high." Dkt. 958 at 7. In fact, Defendants employed their own professional trial services consultants (including not one, but two in-Court audio-visual professionals) and likely incurred similar, if not higher, expenses. This Court has previously found that such audio/visual professional services were necessary. *See, e.g., Finisar Corp. v. DirecTV Group,*

9

*Inc.*, No. 1:05-CV-264, 2006 WL 2699732, *1 (E.D. Tex. Aug. 4, 2006) ("Plaintiff has requested $410,999.65 for media and audio/visual professional services. These costs include nearly two months of maintaining a 'war room.' The court finds that this number is excessive. However, the court will award audio/visual expenses for the trial itself. From the beginning the court stressed to all parties that they needed to agree upon an efficient method to present the case. Both sides used professional trial technicians to present nearly every aspect of the case. The court deems the technology used at this trial necessary and reasonable."). Here, as in *Finisar*, all parties used professional trial technicians to present nearly every aspect of their cases. And, the Court stressed efficiency in presentation, particularly by setting time limits for each side's presentation. The technology and graphics used at trial were necessary and reasonable to effectively present SynQor's case in the allotted time, and SynQor, as the prevailing party, is entitled to recover the cost of their implementation.

## CONCLUSION

For the foregoing reasons, the Court should direct the Clerk of the Court to tax the costs included in SynQor's Supplemental Bill of Costs and include $598,327.57 in the judgment entered against Defendants.

Respectfully submitted,

Dated: February 8, 2011

*/s/ Thomas D. Rein*
**Thomas D. Rein** (*admitted pro hac vice*)
Lead Attorney
trein@sidley.com
**Russell E. Cass** (*admitted pro hac vice*)
rcass@sidley.com
**Paul E. Veith** (*admitted pro hac vice*)
pveith@sidley.com
**Stephanie P. Koh** (*admitted pro hac vice*)
skoh@sidley.com
**Thomas F. Hankinson** (*admitted pro hac vice*)

10

thankinson@sidley.com
**Bryan C. Mulder**  (*admitted pro hac vice*)
bmulder@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:	312.853.7000
Facsimile:	312.853.7036

**Michael D. Hatcher**
Texas State Bar No. 24027067
mhatcher@sidley.com
**David T. DeZern**
Texas State Bar No. 24059677
ddzern@sidley.com
SIDLEY AUSTIN LLP
717 North Harwood, Suite 3400
Dallas, TX 75201
Telephone:	214.981.3400
Facsimile:	214.981.3400

**ATTORNEYS FOR PLAINTIFF SYNQOR, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being served via the Court's CM/ECF system on February 8, 2011, to all counsel of record who are deemed to have consented to electronic service per Local Rule CV-5(a)(3).

*/s/ David T. DeZern*
David T. DeZern