**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SYNQOR, INC, | § | |
| | § | |
| v. | § | CASE NO: 2:07-CV-497-TJW-CE |
| | § | |
| ARTESYN TECHNOLOGIES, INC., et al. | § | |

## <u>AMENDED MEMORANDUM OPINION AND ORDER</u>[a]

Pending before the Court is Defendant's Lineage Power Corporation ("Lineage") Motion to Amend and Increase the Partial Judgment Pursuant to Fed. R. Civ. P. 59 (Dkt. No 1032).    In response, Plaintiff SynQor, Inc. ("SynQor") filed an opposition and a cross-motion for sanctions due to failure to timely disclose products during discovery and for an assessment of supplemental damages on recently disclosed sales of Lineage products.  The Court DENIES Lineage's request to amend and increase the partial judgment pursuant to Fed. R. Civ. P. 59.  The Court GRANTS SynQor's requests for supplemental damages for the sales of 79,881 semi-regulated QSW025 and QBW025A0B bus converters incorporated into Lineage's CDC 350 product and 566/568 products.  Based on the damages model adopted by the jury, the Court awards $4,475,051.00 to SynQor for these sales by Lineage.  In addition, the Court holds that Lineage is subject to sanctions for discovery violations as described below in this Memorandum Opinion & Order. The Court ORDERS Lineage to pay $100,000.00 in civil contempt sanctions to SynQor in this case.  Finally, the Court GRANTS SynQor's Motion for attorneys' fees and costs that are attributable to Lineage's discovery abuses in this case.

---

[a] This Amended Memorandum Opinion and Order is to correct a deletion of a portion of footnote 1 on page 13 in the original order (Dkt. No. 1241).  Footnote 1 appears in its entirety in this order.  The deletion was inadvertent and occurred during the conversion process. This order is intended to supersede the original order.

## I.     Introduction

In 2007, SynQor brought this patent lawsuit claiming that a number of defendants either directly infringed its patents or induced infringement or contributed to the infringement of its patents.  Lineage was one of the defendants alleged to directly and indirectly infringe the asserted patents.  As it relates to indirect infringement, Lineage was alleged to induce and contribute to infringement of the asserted patents.  On December 21, 2010, the jury found that Lineage directly infringed claim 1 of U.S. Patent No. 7,558,083 ("the '083 patent") and induced or contributed to infringement of claims 2, 8, 10 and 19 of U.S. Patent No. 7,072,190 ("the '190 patent), claims 21 and 30 of U.S. Patent No. 7,272,021 ("the '021 patent"), claim 1 of the '083 patent, claims 56 and 71 of U.S. Patent No. 7,564,702 ("the '702 patent"), and claim 9 of U.S. Patent No. 7,269,034 ("the '034 patent").  On December 29, 2010, the Court entered a partial judgment on the verdict ordering the defendants to pay the monetary damages awarded by the jury, which collectively totaled $95,224,863, of which approximately $87.1 million was lost profits and the balance of which was a reasonable royalty on units for which lost profits were not calculated. (Dkt. No. 907.)

At the close of trial, SynQor moved for a permanent injunction.  On January 7, 2011, SynQor filed its motion for a permanent injunction against the defendants. (Dkt. No. 913.)  The Court held a full evidentiary hearing on the issue of a permanent injunction that started on January 19, 2011 and ended on January 20, 2011.  On January 24, 2011, the Court entered a memorandum opinion and order granting the permanent injunction. (Dkt. Nos. 931 and 932.)  The defendants then filed an emergency motion to stay the permanent injunction pending interlocutory appeal. (Dkt. No. 933.)  The Court granted the emergency motion, and on January 31, 2011, the Court of Appeals for the Federal Circuit granted a temporary stay of the injunction.  On April 11, 2011, the Federal Circuit replaced its temporary stay with a partial stay of this

Court's injunction.  Specifically, the Federal Circuit ordered that "[t]he stay of the injunction as set forth above will end at the earliest of: (1) this court's final determination of these consolidated appeals, (2) September 30, 2011, or (3) provision by SynQor of a technically qualified replacement."  Under the order, the injunction became permanent for any bus converters where SynQor provided an equivalent model, and was stayed for the remaining bus converters until September 30, 2011.  Defendants were ordered to pay into escrow a $12 royalty per unit rate sold for the bus converters sold under the protection of the stay.

On January 19, 2011, SynQor moved the Court to enter an order establishing a procedure by which the Court could assess and award SynQor supplemental damages on Defendants' sales of infringing products that were not counted in the calculation of damages presented to the jury at trial. (Dkt. No. 917.)  In its motion, SynQor also moved the Court to assess and award supplemental damages covering infringing products that have been or will be sold post-verdict.

On March 1, 2011, Lineage filed the present motion seeking to amend the Court's partial judgment by adding damages for a custom DC-DC product that incorporates a semi-regulated bus converter, the CDC 350.  Specifically, Lineage asks the Court to increase the partial judgment against it by $34,296.00. (Dkt. No. 1032 at 4.)  This is based on a $12 Tier 2 reasonable royalty for the 2,858 semi-regulated QSW025 bus converters sold as part of Lineage's CDC 350 product.  Lineage did not disclose the CDC350 product and the related sales until after the trial and after the Court's entry of a permanent injunction.  Additionally, Lineage also asks the Court to find that two other custom DC-DC products that incorporate semi-regulated bus converters—the ALU 566A2 and related 568B2 (the "566/568 products")—do not infringe.  Specifically, Lineage asks the Court to find that the 566/568 products do not infringe even though these product incorporate the same QBW025A0B semi-regulated bus converter that

3

the jury found to meet all of the bus converter limitations of claim 9 of the '034 patent.  Lineage sold 77,023 semi-regulated QBW025A0B bus converters in its 566/568 products during the relevant time period.  Lineage did not disclose the 566/568 product and the related sales until after the trial and after the Court's entry of a permanent injunction.

In response, SynQor filed the present cross-motion on March 4, 2011.  In its cross-motion, SynQor asks the Court to award supplemental damages for the 2,858 semi-regulated QSW025 bus converters incorporated into the CDC 350 product and the 77,023 semi-regulated QBW025A0B bus converters incorporated into 566/568 products.  SynQor argues that these sales are subject to the lost profits rate awarded by the jury totaling $4,475,051.00 in supplemental damages.  SynQor further requests that the Court grant any such further relief as the Court deems appropriate for Lineage's discovery failure.  On April 20, 2011, the Court entered an order providing a schedule for additional discovery and supplemental briefing. (Dkt. No. 1112.)  The Court held an evidentiary hearing on June 15, 2011 (hereafter "June 15th hearing").  Given this background, the Court will now address the appropriate sanctions for these discovery violations.

## II.    Factual Background

1.    On May 16, 2008, the Court entered a Docket Control Order requiring fact discovery to be completed by August 2, 2010. (Dkt. No. 128.)  The close of fact discovery was later amended to August 23, 2010. (Dkt. No. 436.)

2.    On June 2, 2008, the Court entered a Joint Discovery Order requiring the parties to produce all relevant documents "without awaiting a discovery request." (Dkt. No. 138, ¶ 3(b).)  Under this Order and the Federal Rules of Civil Procedure, the parties also had a duty to continuously supplement its production and responses to interrogatories. (Dkt. No. 138 at ¶ 8; Fed. R. Civ. P. 26(e).)

4

3.      On December 23, 2009, SynQor served Interrogatory No. 21 that requested the identification of all custom products that incorporate the accused bus converters and related documents.  Lineage appointed its Intellectual Property Coordinator, Mr. Richard Hock, with the responsibility to discover any products responsive to SynQor's request.  At the time, Mr. Hock was a 37-year veteran of Lineage and its predecessors (Lucent and Bell Labs) and was the former head of the board mounted power and DC-DC converter and design business for Lineage's predecessors.  In conducting his investigation, Mr. Hock did not conduct a search of any of Lineage's electronic databases, but instead relied exclusively on meetings with Lineage's DC-DC power executives.  With the exception of one product Lineage had inherited from Cherokee International Corporation, the answers Mr. Hock received from each source was that there were no Lineage custom products that incorporated accused bus converters.  Lineage answered SynQor's Interrogatory No. 21 accordingly.

4.      On August 23, 2010, fact discovery closed.

5.      On November 15, 2010, the parties submitted a Joint Final Pre-Trial Order, which included Lineage's counsel certifying and acknowledging that "[f]ull and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders." (Dkt. No. 615.)

6.      The jury trial started on December 13, 2010.   During the trial, SynQor's infringement expert, Dr. Steven Leeb, addressed the QSW025 and QBW025A0B semi-regulated bus converters that are used in the Lineage's recently disclosed CDC350 and 566/568 products. Specifically, Dr. Leeb included these bus converters in his list of semi-regulated bus converters that meet the bus converter limitations of claim 9 of the '034 patent. (Dkt. No. 1033-7 at 21, PTX 2288 at slide 54 (including "QBW025A0B" and "QSW025" in list of Lineage's semi-regulated

5

bus converters accused of meeting all of the bus converter limitations of claim 9); 12/15/2010 Morning Transcript at 123:3-20 (Dr. Leeb explaining that slide 54 shows Defendants' semi-regulated bus converters that are accused of meeting all the bus converter limitations in clam 9)).

7.      Dr. Leeb also explained to the jury why Lineage's bus converters, including the QSW025 and QBW025A0B products, meet the bus converter limitations of claim 9. (12/15/2010 Morning Transcript at 126:6-143:20.)  Dr. Leeb also explained that there are no substantial non-infringing uses for these bus converters. (*Id.* at 125:3-24, 146:8-24, 150:13-151:6.)

8.      The jury reached a verdict on December 21, 2010, and agreed with Dr. Leeb's infringement analysis.  The jury concluded that Lineage induced and contributed to infringement of claim 9 of the '034 patent. (Dkt. No. 889 at 18-19.)  The jury awarded damages that were equal to the amount SynQor requested, indicating that the jury agreed that Lineage's QSW025 and QBW025A0B semi-regulated bus converters meet the bus converter limitations and that there are no substantial non-infringing uses for them.

9.      On January 24, 2011, the Court entered a permanent injunction. (Dkt. Nos. 931 and 932.)

10.      Following issuance of the Court's permanent injunction, Lineage represents to the Court that it conducted several high level management meetings with several dozen employees to disseminate the Court's order and execute immediate compliance.  After one of the meetings, Mr. Michael Terry, the senior manager for product line management and OEM embedded DC-DC products, approached Mr. Hock to tell him that he recalled that Lineage made a legacy custom product (the ALU 566/586) for Alcatel-Lucent that incorporated semi-regulated bus converters and would be subject to the injunction.  Mr. Hock represents that he had directly asked Mr. Terry about the existence of any Lineage custom products a year prior, but Mr. Terry

6

had not identified any at that time.  Lineage then launched a more thorough investigation to determine whether any other unidentified custom products existed, which resulted in identifying a small number of sales for the additional CDC 350 product.  Lineage contends that the latter investigation confirms that there are no other undisclosed products containing semi- or unregulated bus converters.

11.     On February 16, 2011, counsel for Lineage, Mr. Richard Vasquez, informed counsel for SynQor that Lineage had "just recently became aware that Lineage inadvertently omitted certain custom products from its response to Interrogatory No. 21" in this case. (Dkt. No. 1032-14, Feb. 16, 2011 e-mail).  At the same time, Lineage provided a supplemental response to SynQor's Interrogatory No. 21, which requested identification of any products Lineage sells, custom-designed for a particular customer or otherwise, that incorporate one or more of its accused bus converters. (Dkt. No. 1033-4, Lineage's Supplemental Responses to SynQor's Interrogatory Nos. 21 and 10, dated Feb. 16, 2011 (“Supp. Resp.”)).  In its supplemental response, Lineage identified the CDC350 product that incorporates Lineage's QSW025 bus converter and the 566A2 and 568B2 products that incorporate Lineage's QBW025A0B bus converters. (*Id.* at 8; *see also* Ex. J to Supp. Resp. (bill of materials for CDC350 listing one QSW025A0B61-14PHZ bus converter); Ex. A to Supp. Resp. (bill of materials for 566A2 listing three QBW025A0B7-PH bus converters); Ex. C to Supp. Resp. (bill of materials for 568B2 listing four QBW025A0B7-PH bus converters)). These products and the use of Lineage's bus converters in them had never been disclosed prior to this February 16 supplemental response.

12.     On February 16, Lineage also provided an updated response to SynQor's Interrogatory No. 10, which requested sales data. (Supp. Resp. at 9-10).  And Lineage produced documents regarding the technical specifications and the unit and dollar sales volume for the

CDC 350 and the 566/568 products, as well as the identity of the entities to which the various units of these custom products have been sold.  The sales data indicates that Lineage sells the CDC 350 product to Infinera and the 566A2 and 568B2 products to Alcatel-Lucent and Sprint. (Dkt. No. 1033-2 ¶¶ 9-10; 1033-4, Ex. P to Supp. Resp.)

13.     Lineage concedes that the jury would have found the CDC 350 to be infringing and would have assessed damages for the 2,858 semi-regulated bus converters sold as part of the CDC 350 product. (Dkt. No. 1032 at 4.)  Lineage asks the Court to increase its partial judgment against it by $34,296.00.  This is based on a $12 Tier 2 reasonable royalty for the 2,858 semi-regulated bus converters sold as part of the CDC 350 product.  SynQor disagrees and requests that the Court award supplemental damages for the sale of these 2,858 semi-regulated bus converters in the amount of $164,592.00.  SynQor's damages calculation is based on the lost profits model adopted by the jury.

14.     Lineage next contends that the jury would have found that the use of the QBW025A0B bus converters in the 566/568 products does not infringe.  Thus, Lineage argues that SynQor is not entitled to damages that resulted from the sales of 77,023 semi-regulated QBW025A0B bus converters in the 566/568 products.  Alternatively, Lineage argues that if the Court finds that these products do infringe, then the Court should award $924,276.00 in reasonable royalty damages. (Dkt. No. 1195-1 at 21.)  SynQor disagrees and requests that the Court award supplemental damages for the sale of these 77,023 semi-regulated QBW025A0B bus converters in the amount of $4,310,460.00. (Dkt. No. 1033-2 at 7.)  In total, SynQor asks the Court to award supplemental damages for the sales of 79,881 semi-regulated QSW025 and QBW025A0B bus converters incorporated into Lineage's CDC 350 product and 566/568 products at the lost profits rate awarded by the jury totaling $4,475,051.00 in supplemental

8

damages.

### III.   The Law on Sanctions

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders.  This Court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action . . . ."  Rule 37 also permits this Court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980).  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id.* at 763-64 (citation omitted).

Rule 37(b)(2) requires that any sanction be just and that the sanction must be related to the particular claim which was at issue in the order to provide discovery. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted) (sanction was a finding of alter ego rooted in party's behavior regarding discovery related to the alter ego issue). Further, the penalized party's discovery violation must be willful. *United States v. $ 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003).  Finally, a severe sanction under Rule 37 is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.*

In addition to Rule 37, this Court also has inherent powers to enter sanctions.  The inherent powers of this Court are those which "are necessary to the exercise of all others." *Roadway Express,* 447 U.S. at 764 (citation omitted).  The contempt sanction is the most prominent inherent power, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court."  *Id.* (citation omitted).  The Fifth Circuit has recognized that the inherent power "is necessarily

incident to the judicial power granted under Article III of the Constitution." *Gonzalez v. Trinity Marine Group, Inc.,* 117 F.3d 894, 898 (5th Cir. 1997) (quoting *Woodson v. Surgitek, Inc.,* 57 F.3d 1406 (5th Cir. 1995)). When inherent powers are invoked, however, they must be exercised with "restraint and discretion." *Id.* Therefore, severe sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." *Id.* In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules. *Natural Gas Pipeline v. Energy Gathering, Inc.,* 2 F.3d 1397, 1407 (5th Cir. 1993). That is, a district court is "free to fashion any sanction appropriate to punish recalcitrant parties and to deter those similarly situated." *Batson v. Neal Spelce Assoc., Inc.,* 765 F.2d 511, 516 (5th Cir. 1985).

Under Federal Rule of Civil Procedure 37(b)(2)(vii), the Court may "treat[] as contempt of court the failure to obey any order." *Int'l Union, UMW v. Bagwell,* 512 U.S. 821, 833 (1994) (stating that a district court's finding of failure to comply with discovery orders is a finding of civil contempt). Additionally, under the Court's inherent powers to impose sanctions, as noted above, the contempt sanction is the most prominent inherent power. *See Roadway Express*, 447 U.S. at 764. Judicial sanctions for civil contempt may be "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). "The district court 'has broad discretion in the assessment of damages in a civil contempt proceeding.'" *Id.* (citations omitted). "'The purpose is to compensate for the damages sustained. The public rights that the said court orders sought to protect are important measures of the remedy.'" *Id.* (citations omitted). The Fifth Circuit has instructed that for sanctions under Rule 37(b)(2), "[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Compaq*,

387 F.3d at 413.  For sanctions under the Court's inherent power, the Supreme Court has instructed that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express*, 447 U.S. at 765.  Finally, the Fifth Circuit has recognized "that a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of the case." *Fleming v. Assoc. v. Newby & Tittle*, 529 F.3d 631, 637 (5th Cir. 2008); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-396 (1990).

## IV.     The Court's Findings and Sanctions

In the light of the record in this case, the Court makes the following findings and determines that:

1.      Lineage had in its possession, custody, and/or control certain relevant documents relating to its CDC 350 product that incorporate Lineage's semi-regulated QSW025 bus converters.  Lineage also had in its possession, custody, and/or control certain relevant documents relating to its 566/568 products that incorporate Lineage's semi-regulated QBW025A0B bus converters.  A reasonable discovery investigation would have determined that the QSW025 and QBW025A0B bus converters were used and sold in the CDC350 and 566/568 products.  Thus, the CDC350 and 566/568 products should have been fully disclosed during discovery in response to the Court's Joint Discovery Order requiring the parties to produce all relevant documents "without awaiting a discovery request."  (Dkt No. 138, ¶ 3(b).)  Instead, they were not disclosed until February 16, 2011, which was well after the close of discovery and well after the jury reached a verdict.

2.      Based on the record and the testimony at the June 15th hearing, the Court finds that Lineage's conduct constitutes a willful violation of the Court's Discovery Order.  For example, in the proposed pretrial order that was submitted jointly by the parties, the parties made

11

the certification that "[t]he undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following: (1) Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders."  (Dkt. No. 615, at 10.)  The Court finds that Lineage failed to conduct an adequate investigation and failed to provide a full and complete disclosure.  Thus, Lineage violated the Discovery Order and made a false certification in its pretrial order by not disclosing the documents relating to its CDC 350 and 566/568 products.

3.      Lineage contends that it was through an "inadvertent oversight" that it failed to locate these significant numbers of sales until after the jury's verdict.  Lineage's only explanation for this oversight is that "one single manager blew it in his identification of Lineage custom products that might contain accused bus converter."  (Dkt. No. 1137 at 23.)  The Court finds Lineage's explanation fails to address why it was reasonable to rely on one single manager's memory to fulfill its discovery obligations.  As proven here, relying on the memory of a single person can prove inadequate when there are more reliable, efficient, and logical means to conduct an investigation.  Most troubling to the Court is the lack of any explanation on why Lineage did not use the database search identified in Mr. Warren Ives Declaration for its initial investigation back in 2009.  (Dkt. No. 1032-3 at 3, ¶¶ 4-6.)  These steps appear to be far from unduly burdensome.  In fact, they seem like the most appropriate starting point given all the facts and circumstances in this case.  Accordingly, the Court finds Lineage's decision to rest its discovery obligations on one manager's memory was a willful choice to violate its obligation to conduct an adequate investigation and provide a full and complete disclosure.

4.      Additionally, the Court further finds that the willfulness of Lineage's discovery violation becomes even more apparent when considering the magnitude of the sales that were

inadvertently overlooked.  For example, through the date of the jury verdict, Lineage sold 39,242 QBW025A0B units worldwide to outside customers directly, but 92,794 QBW025A0B bus converters were sold to customers worldwide incorporated in its ALU 566/568 products.  In the later part of this period, when the litigation was most active and when Lineage answered SynQor's interrogatory requesting identification of custom products (Interrogatory No. 21), the disparity was even more dramatic.  From 2009 through the date of the jury's verdict, only 13,743 QBW025A0B units were sold independently to outside customers worldwide, while 55,577 were sold worldwide as part of the ALU 566/568 products.  It is hard to understand how Lineage simply overlooked the ALU 566/568 products when they represented 80% of its QBW025A0B sales during the most active period of the litigation.  This fact alone indicates that Lineage did not even take the most basic step of ensuring it provided a full and complete disclosure.

5.       The Court further finds that SynQor has proven by a preponderance of the evidence that the CDC 350 product and the 566/568 products directly infringe claim 9 of the '034 patent.  The jury found that Lineage's QSW025 and QBW025A0B semi-regulated bus converters meet the bus converter limitations of claim 9 and that there are no substantial non-infringing uses for these converters.  Thus, based on the damages model presented to the jury, the 2,858 additional sales of Lineage's QSW025 bus converters in its CDC350 product resulted in lost profits damages of $164,592.00 (Dkt. No. 1033-2 at 7.)  Likewise, based on the damages model presented to the jury, the 77,023 additional sales of Lineage's QBW025A0B bus converters in its 566/568 product resulted in lost profit damages of $4,310,460.00. *Id.* Accordingly, the Court awards $4,475,051.00 to SynQor for these sales by Lineage.

6.       For the reasons stated above, the Court finds that Lineage willfully and intentionally violated the Court's discovery order, and that Lineage's conduct constitutes

discovery abuse. As sanction for Lineage's conduct, the Court orders Lineage[1] to pay $100,000.00 in civil contempt sanctions to SynQor in this case.[2]  This civil sanction is to compensate SynQor for losses sustained due to Lineage's discovery violations, including prejudgment interest.  *See Am. Airlines*, 228 F.3d at 574 (stating that civil sanctions may be issued to compensate the complainant for losses sustained).  Under the guidelines the Fifth Circuit has given for Rule 37(b)(2) sanctions, the Court finds that the civil contempt sanction of $100,000.00 is "just" given the extreme prejudice SynQor suffered by not having access to this important information.  The sanction is also related to the particular claim which was at issue—the sanction compensates SynQor for additional recovery it could and would have received if Lineage had met its discovery obligations.  Therefore, this particular civil contempt sanction of $100,000.00 is appropriate under Rule 37(b)(2).  The undersigned judge must protect the integrity of this Court.  This sanction is intended to act as a deterrent to other patent litigants that might consider engaging in similar behavior. *See Roadway Express*, 447 U.S. at 764 (noting that sanctions must be applied "to deter those who might be tempted to such conduct in the absence of such a deterrent").  In addition, the $100,000.00 civil contempt sanction is appropriate under the Court's inherent power, although the Court need not use its inherent power to sanction for contempt in order to justify the $100,000.00.[3]

7.      Pursuant to Fed. R. Civ. P. 37, the Court awards attorneys' fees and costs to SynQor that are attributable to Lineage's discovery abuses in this case.  In order to recovery such fees and costs, SynQor must, together with an application for such fees and costs, submit

---

[1] The sanctions in this Memorandum Opinion & Order are directed toward Lineage and not its attorneys.
[2] The Court finds that the egregiousness of Lineage's conduct was much less than that of the defendant identified in SynQor's Motion for Sanctions and an Assessment of Supplemental Damages on Recently Disclosed Sales (Dkt. No. 1129).
[3] The $100,000.00 sanction is for the Rule 37(b)(2) violation.

satisfactory proof that the fees and costs its seeks are attributable to Lineage's discovery abuse. The Court will retain jurisdiction to enter the awarding of attorney fees even after final judgment is entered. *Fleming*, 529 F.3d at 637 ("[A] district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of the case.").

## V.    CONCLUSION

In conclusion, the Court ORDERS Lineage to pay SynQor $4,475,051.00 for the 2,858 additional sales of Lineage's QSW025 bus converters in its CDC 350 product and the 77,023 additional sales of Lineage's QBW025A0B bus converters in its 566/568 products.  The Court holds that Lineage is subject to sanctions for various discovery violations as described in this Memorandum Opinion & Order.  The Court ORDERS Lineage to pay $100,000.00 in civil contempt sanctions to SynQor in this case.  The Court awards attorneys' fees and costs to SynQor that are attributable to Lineage's discovery abuses in this case.  The Court has considered lesser sanctions, but finds that such sanctions would be ineffective to cure the prejudice resulting from Lineage's conduct and deter such conduct in the future.

It is so ORDERED.

SIGNED this 12th day of July, 2011.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

15